IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES f/u/b/o<br>ATLANTIC REFINISHING &<br>RESTORATION, INC.<br>2320 Old Washington Road<br>Waldorf, MD 20610<br><br>and<br><br>ATLANTIC REFINISHING &<br>RESTORATION, INC.<br>2320 Old Washington Road<br>Waldorf, MD 20601<br><br>       Plaintiffs,<br><br>v.<br><br>SIGAL CONSTRUCTION CORP.<br>3299 K Street, N.W.<br>Washington, D.C. 20007<br><br>and<br><br>LIBERTY MUTUAL<br>INSURANCE COMPANY<br>175 Berkeley Street<br>Boston, MA 02116<br><br>       Defendants. | CASE NUMBER 1:06CV01611<br><br>JUDGE: Ellen Segal Huvelle<br><br>DECK TYPE: Contract<br><br>DATE STAMP: 09/18/2006 |

\* \* \* \* \* \* \*

**COMPLAINT**

COMES NOW, Plaintiff and Use Plaintiff Atlantic Refinishing and Restoration, Inc. ("Atlantic"), for its Complaint against Defendant Liberty Mutual Insurance ("Liberty Mutual") and Defendant SIGAL Construction Corporation ("SIGAL") and states as follows:

**Parties**

1. Plaintiff and Use Plaintiff Atlantic is a Maryland corporation whose principal place of business is 2320 Old Washington Road, Waldorf, Maryland 20601.

2. Defendant Liberty Mutual is the Payment Bond Surety on Bond Number 017010125 whereon SIGAL is identified as principal.[1] Upon information and belief, Liberty Mutual is a Massachusetts corporation, maintains its principal place of business in Boston, Massachusetts, and is a Surety duly authorized to conduct surety work in the District of Columbia.

3. Upon information and belief, Defendant SIGAL is a Maryland corporation whose principal place of business is in Washington, D.C.

**Jurisdiction**

4. Plaintiff's action against Defendant Liberty Mutual is based upon the Miller Act, 40 U.S.C. § 3131 et seq., which vests exclusive, original jurisdiction in this Court. See 40 U.S.C. § 3133(b)(3)(B). Plaintiff's action against Defendant SIGAL is based upon the Miller Act as well as 28 U.S.C. § 1367 (supplemental jurisdiction), which vests in this Court jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

**Factual Background**

5. On or about October 23, 2003, the United States General Services Administration awarded Contract No. GS11P03MKC0047 to SIGAL for interior renovations at the Old State Department building in Washington, D.C. ("the Project").

---

[1] Plaintiffs are not currently in possession of a copy of the Bond, but will provide a copy to the Court when it is obtained.

6. Defendant Liberty Mutual issued Payment Bond No. 017010125 to Defendant SIGAL, obligating Liberty Mutual to pay SIGAL's subcontractors in the event that SIGAL failed to pay for materials and labor furnished to the Project. Such Payment Bonds are required by the Miller Act, *supra*, as well as the Federal Acquisition Regulation ("FAR"), codified at Volume 48 of the Code of Federal Regulations ("48 C.F.R.").

7. On or about October 27, 2003, SIGAL and Atlantic entered into a subcontract under which Atlantic would provide dimensional stone tile, interior stone restoration, ornamental metal restoration, woodwork restoration, and interior stone facing for the Project. The original subcontract amount was $1,519,900.00. A copy of the subcontract is attached as Exhibit A.

8. Through change orders and agreed-upon adjustments, the final total subcontract amount was $2,291,431.00.

9. The last day that contract work was performed by Atlantic under the subcontract was September 27, 2005.

10. Atlantic has been paid a total of $ 1,792,155.00, leaving a balance due on the subcontract of $499,276.00.

11. Deducting the amount of $253,062.00 from the subcontract balance for a claim that the parties have agreed to pursue separately against the government, the subcontract balance due to Atlantic from SIGAL is $246,214.00.

12. Upon information and belief, the prime contract between SIGAL and the GSA incorporated a standard clause required by the Federal Acquisition Regulation ("FAR"), codified at 48 C.F.R. § 32.111(a)(5). The language of the incorporated FAR

clause appears at 48 C.F.R. § 52.232-5, entitled "Payments Under Fixed-Price Construction Contracts (May 1997)" ("the Payment Clause"). The Payment Clause, at subparagraph (c)(2), required SIGAL, as a condition of receiving a progress payment from the GSA, to certify that "[p]ayments to subcontractors and suppliers have been made from previous payments under the contract, and timely payments will be made from the proceeds of the payment covered by this certification, in accordance with subcontract agreements and requirements of chapter 39, Title 31, United States Code." The Payment Clause, at subparagraph (c)(3), also required SIGAL to certify that "[t]his request for progress payments does not include any amounts which the prime contractor intends to withhold or retain from a subcontractor or supplier in accordance with the terms and conditions of the subcontract."

13. SIGAL's subcontract with Atlantic contains a provision similar to the Payment Clause that permitted SIGAL to retain ten percent (10%) of each invoice payment. However, the subcontract provision required SIGAL to release any retained amounts upon receipt of payment from the GSA. See Exhibit A, ¶ 4.3

14. Upon information and belief, SIGAL's prime contract with the GSA also incorporated the standard FAR Clause 52.232-27, entitled "Prompt Payment for Construction Contracts (June 1997)" ("the Prompt Payment Clause") which is required by FAR § 32.908(b). Among other things, this clause contains a provision at subparagraph (c)(1) headed "Prompt payment for subcontractors," which required SIGAL to pay its subcontractors within "7 days from receipt of payment" from the government.

15. SIGAL approved the performance of changed and extra work by Atlantic under the subcontract, but in breach of that contract SIGAL has failed to pay Atlantic the balance due on the subcontract.

16. To date, and excluding interest owed for late payment, SIGAL has wrongfully retained $246,214.00 for work performed and properly invoiced by Atlantic.

17. By letter dated April 25, 2006, Atlantic notified Liberty Mutual of SIGAL's failure to comply with its payment obligations.

## COUNT I
### (Miller Act Bond Action Against Liberty Mutual)

18. The allegations contained in paragraphs 1 through 17 above are incorporated by reference herein as if restated in full.

19. SIGAL has failed to pay Atlantic for labor and/or materials furnished to the Project totaling $246,214.00 in excess of what Atlantic contractually agreed to furnish. SIGAL has wrongfully refused to pay Atlantic for this changed and extra work, in breach of its subcontract with Atlantic and its obligations under its contract with the GSA.

20. Atlantic has on several occasions notified SIGAL and Liberty Mutual of its claims arising from performance of the contract, but SIGAL has failed to pay Atlantic's claims.

21. Atlantic has complied with all of the conditions required of it under the Liberty Mutual Payment Bond and the Miller Act.

22. This action is timely because it is brought within one year after the day on which Atlantic last performed contract work on the Project.

## COUNT II
### (Breach of Contract Against SIGAL)

23. The allegations of paragraphs 1 through 22 are incorporated by reference as if restated in full.

24. SIGAL has materially breached its contract with Atlantic by failing to pay the balance due for changes and extras, which is work that was agreed upon by the parties.

25. As a result of SIGAL's material breach, Atlantic has incurred damages in an amount to be determined at trial, but in any event are no less than $246,214.00.

## COUNT III
### (Quantum Meruit)

26. The allegations of paragraphs 1 through 25 are incorporated by reference as if restated in full.

27. Atlantic performed the Project work, including extras and changed work, at SIGAL's direction with the reasonable expectation that SIGAL would fully compensate Atlantic for the work performed. SIGAL understood when directing Atlantic to perform extra and changed work that Atlantic expected to be fully compensated for it by SIGAL. Atlantic is therefore entitled to recover in quantum meruit for the value of the extra and changed work and materials supplied to SIGAL.

28. The unpaid reasonable value of the work performed on the Project by Atlantic is to be determined at trial, but in any event is no less than $246,214.00.

## PRAYER FOR RELIEF

WHEREFORE, Use Plaintiff Atlantic Refinishing & Restoration, Inc. hereby demands judgment against Liberty Mutual Insurance Company and SIGAL Construction Corporation, jointly and severally, in the amount of $246,214.00, plus costs, interest, attorney fees, and such other relief as this Court deems just and proper.

Respectfully submitted,

**ATLANTIC REFINISHING &
RESTORATION, INC.**
by its attorneys

Herman M. Braude, Esq. (D.C. Bar No. 051326)
Michael A. Lewis, Esq. (D.C. Bar No. 479906)
Susan Van Bell, Esq. (D.C. Bar No. 439972)
BRAUDE & MARGULIES, P.C.
1200 Potomac Street, N.W.
Washington, DC 20007
202-471-5400
202-471-5404 (fax)

## JURY DEMAND

Pursuant to F.R. Civ. P 38(b), Plaintiff hereby demands a trial by jury in the above-captioned action.