# Exhibit A



# SIGAL CONSTRUCTION CORPORATION

## SUBCONTRACT AGREEMENT

3299 K Street, N.W.
Washington, D.C. 20007

**RECEIVED**
DEC 2 3 2003
**SIGAL**

THIS SUBCONTRACT, made this 27th day of October,2003 by and between **SIGAL CONSTRUCTION CORPORATION** (hereinafter "**SIGAL**") and **Atlantic Refinishing and Restoration, Inc., 2320 Old Washington Road, Waldorf, MD 20601** (hereinafter "Subcontractor").

## WITNESSETH:

WHEREAS, SIGAL and General Services Administration, N CR, 7 th & D Sts., SW, Washington, DC 2 0406 (hereinafter "Owner". Owner, as used herein, includes all Owner's representatives, including, as appropriate, the Architect), have entered into a contract dated **October 23, 2003** for the construction of **Old State Build-out—SIGAL# 02790** (hereinafter "Project", according to the Contract Documents listed in Rider "B" attached hereto and made a part hereof and available for Subcontractor's review during normal working hours at SIGAL's office; and

WHEREAS, SIGAL desires to subcontract certain work specified in the Contract Documents, and Subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed.

NOW, THEREFORE, in consideration of the mutual agreements herein expressed, the parties do contract as follows:

**1.     SCOPE OF WORK**

Subcontractor shall perform all work and furnish all labor, materials, equipment, scaffolding, tools, supervision, supplies, applicable taxes, freight, insurance and all other things necessary for the construction and completion of the work described in Rider "A" attached hereto and made a part hereof and work incidental hereto, in strict accordance with the Contract Documents. Except as may be specifically provided by the terms of this Subcontract Agreement, Subcontractor shall have only the rights which SIGAL has under its Contract with the Owner, and Subcontractor shall assume all obligations, risk and responsibilities which SIGAL has assumed towards Owner in its Contract with the Owner.

**2.     CONTRACT PRICE**

SIGAL agrees to pay Subcontractor for the satisfactory performance of Subcontractor's work, subject to additions and deductions by change order or other Subcontract provisions, the total sum of **ONE MILLION FIVE HUNDRED NINETEEN THOUSAND NINE HUNDRED DOLLARS ($1,519,900.00)** in accordance with Section 4.

**3.     PERFORMANCE AND PAYMENT BONDS**

3.1     Bonds

a.     ☐    Immediately upon receipt of this Subcontract, Subcontractor shall at the expense of _____.

furnish to SIGAL performance and payment bonds, in a form and from a surety acceptable to SIGAL, in the full amount of this Subcontract.

b.     ☐    No bond required. Section 3.1a not applicable when box is checked.

3.2     Additional Security. If Subcontractor has not been required to furnish bonds, SIGAL may, at any time, instruct Subcontractor, in writing, to provide performance and payment bonds within ten (10) days, in a form and from a surety acceptable to SIGAL, in an amount up to the then current full value of the Subcontract. SIGAL will reimburse Subcontractor the amount of the bond cost. In the event Subcontractor cannot provide such bonds, SIGAL may request other security as it deems appropriate, at its sole discretion, or it may terminate the Subcontractor for default.

**4.     PAYMENT**

4.1     Progress Payments. Progress payments shall be due Subcontractor in the amount of 90% of the work in place which SIGAL and Owner have approved and for which Owner has paid SIGAL. For the purpose of determining progress payments, Subcontractor shall furnish SIGAL, before its first application for progress payment, a Schedule of Values satisfactory to SIGAL. If SIGAL disapproves of Subcontractor's Schedule of Values, SIGAL shall establish a reasonable breakdown which shall serve as the basis for progress payments.

4.2     Stored Materials. Unless otherwise provided in the Contract Documents, Subcontractor shall be paid its progress payments in the amount of 90% of the value of stored materials SIGAL and Owner have approved and for which Owner has paid SIGAL. Approval of payment for such stored items on or off site shall be based on submission by Subcontractor of evidence satisfactory to SIGAL and Owner to protect Owner's and SIGAL's interest in such materials and equipment, including transport to the site.

# SIGAL CONSTRUCTION CORPORATION
## SUBCONTRACT AGREEMENT

4.3    <u>Time of Payment</u>.  Subcontractor shall submit progress payment applications in a form satisfactory to SIGAL no later than the 25th day of each payment period for work performed up to and including the last day of payment period, indicating work completed and, to the extent allowed under Section 4.2, materials suitably stored during the preceding payment period.  Notwithstanding any provisions, inconsistencies or ambiguities in SIGAL's contract with the Owner, progress payments shall be made by SIGAL to Subcontractor following SIGAL's receipt of payment from the Owner for such Subcontractor's work.  However, it is specifically understood and agreed that the payment to the Subcontractor is dependent, as a condition precedent upon SIGAL receiving contract payments, including retainer from the Owner.  S ubcontractor expressly waives a ll right o f a ction a gainst SIGAL until said monies are actually received by SIGAL from the Owner.  Subcontractor understands and agrees that it is relying on the creditworthiness of the Owner and not SIGAL for payment.

4.4    <u>Failure of Subcontractor to Make Payment</u>.  Subcontractor shall ensure that all its subcontractors, employees and suppliers are paid all amounts due in connection with this Subcontract.  SIGAL may withhold any progress payments until Subcontractor submits evidence satisfactory to SIGAL that all amounts due in connection with this Subcontract have been paid.  Further, in its sole discretion, SIGAL may pay any and all persons who have not received payment due in connection with this Subcontract, whether or not a lien has been filed.  If SIGAL is required to pay or indemnify any person hereunder, Subcontractor shall immediately reimburse SIGAL for the full amount of such cost.  Subcontractor shall also immediately reimburse SIGAL for any amounts paid under SIGAL's payment bond in connection with this S ubcontract, o r o ther S IGAL p ayments relating to a failure of Subcontractor to make payment, and indemnify SIGAL for any other costs associated therewith.

4.5    <u>Partial Lien Waivers and Affidavits</u>.  When required by SIGAL, Subcontractor shall provide, in a form satisfactory to SIGAL and Owner, partial lien or claim waivers and affidavit from Subcontractor and its subcontractors and suppliers for all prior payments to Subcontractor as part of each request for partial payment other than the initial request.

4.6    <u>Payment Not A cceptance</u>.  P ayment to S ubcontractor is s pecifically a greed n ot to  constitute or imply acceptance by SIGAL or Owner of any portion of Subcontractor's work.

4.7    <u>Transfer of Title</u>.  All materials and work covered by progress payments received by Subcontractor shall become the property of SIGAL or, if Contract Documents so provide, the property of Owner.  This provision does not affect Subcontractor's sole responsibility and liability for all such materials and work until final acceptance by Owner.

4.8    <u>Right to Withhold Payment</u>.  SIGAL may withhold amounts otherwise due under this Subcontract or due under any other contractual arrangement between the parties to compensate SIGAL for costs SIGAL has incurred or may incur for which Subcontractor may be responsible hereunder or otherwise.  Appropriate adjustments to withholding shall be made when the exact amounts owed hereunder are determined.

4.9    <u>Final Payment</u>.  F inal payment, s ubject t o withholdings p ermitted h ereunder, s hall be made after: (1) Subcontractor's work has been completed and approved by Owner; (2) evidence satisfactory to SIGAL that Subcontractor has satisfied all payrolls, bills for materials and equipment, and all known indebtedness connected with Subcontractor's work; (3) the entire Project is certified complete by the Owner; and (4) SIGAL has been paid in full for the entire Project.

## 5.    SCHEDULE OF WORK

5.1    <u>Time of Performance</u>.  S ubcontractor will p roceed with the work in a p rompt a nd d iligent m anner, in a ccordance with S IGAL's directives and SIGAL's schedule, revised if necessary, as the work progresses.  TIME IS OF THE ESSENCE.  Subcontractor shall not be entitled to additional compensation for compliance with schedule revisions, except to the extent that the Contract Documents entitle SIGAL to additional compensation and such reimbursement is obtained from the Owner.

5.2    <u>Subcontractor's Schedule</u>.  If requested by SIGAL, Subcontractor shall submit to SIGAL a detailed schedule for performance of the work, in a form acceptable to SIGAL, which shall comply with all scheduling requirements of the Contract Documents and of Section 5.1 above.  SIGAL may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

5.3    <u>Priority of Work</u>.  Subcontractor will coordinate its work with the work of SIGAL, other subcontractors and Owner's other builders, if any, to prevent or mitigate delays or interferences in the completion of any part or all of the Project.  SIGAL shall have the right to decide the time, order and priority in which various portions of the work shall be performed and all other matters relative to the timely and orderly conduct of Subcontractor's work.

## 6.    SUBCONTRACTOR'S LIABILITY

6.1    <u>Scope</u>.  S ubcontractor s hall b e l iable to S IGAL for a ll costs SIGAL incurs as a result of Subcontractor's failure to perform this Subcontract in accordance with its terms.  Subcontractor's failure to perform shall include the failure of its suppliers and/or subcontractors of any tier to perform.  Subcontractor's liability shall include, but not be limited to: (1) damages and other delay costs payable by SIGAL to Owner; (2) SIGAL's increased performance costs, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties, including other subcontractors of SIGAL; (5) excess costs of reprocurement; and (6) attorney's fees and related costs of resolving disputes with Subcontractor related to Subcontractor's performance.

6.2    <u>Use of Equipment Owned by Others</u>.  If Subcontractor or any of its agents, employees, suppliers, or lower-tier subcontractors use any machinery, equipment, tools, scaffolding, hoists, lifts or similar items belonging to or under the control of SIGAL or other subcontractors or suppliers, Subcontractor assumes all risks of such use.  Subcontractor shall be liable to and indemnify SIGAL for any loss or damage, including personal injury or death, which may arise from such use, except where such loss or damage shall be due solely to the negligence of SIGAL employees or other contractors.



# SIGAL CONSTRUCTION CORPORATION
## SUBCONTRACT AGREEMENT

### 7.    CHANGES AND CLAIMS

7.1    Changes.  SIGAL may, either unilaterally or by direction of Owner, without notice to sureties, make changes in the work covered by this Subcontract at any time.  Any changes to the Subcontract shall be in writing and Subcontractor shall perform the work, as changed, without delay.  If Subcontractor does not submit a price quotation within seven (7) days to SIGAL for changes requested by Owner, SIGAL may use its best estimate of the proposed change as it affects Subcontractor in its quotation to Owner, which estimate shall be the maximum amount due Subcontractor for such work.

7.2    Claims.  Any claims for adjustment in price, time or other Subcontract provisions, shall be submitted to SIGAL, in writing, in sufficient time for SIGAL to submit claims to Owner in accordance with the Contract Documents.  If directed by SIGAL, Subcontractor shall certify the completeness and accuracy of its claim as a condition to its consideration by SIGAL or Owner.

7.3    Claims Relating to Owner.  If Subcontractor submits a claim to SIGAL arising out of or relating to problems caused by or which are the responsibility of the Owner, Subcontractor agrees to be bound to SIGAL to the same extent that SIGAL is bound to Owner by the terms of the Contract Documents and by any and all decisions or determination made by a Court or the party or board so authorized in the Contract Documents to decide disputes between SIGAL and Owner, whether or not Subcontractor is a party to such proceedings.  SIGAL shall be liable to Subcontractor for no more than Subcontractor's equitable share of any recovery from Owner.  SIGAL agrees to present to the Owner, in SIGAL's name, and, if necessary, invoke the disputes provision of the Contract Documents for all Subcontractor's claims for extras and equitable adjustments, timely submitted, whenever the Contract Documents permit SIGAL to do so, and SIGAL reasonably believes such claim is valid.  Subcontractor agrees to furnish all documents, statements, witnesses and other information required by SIGAL for investigating and presenting Subcontractor's claims and to pay or reimburse SIGAL for all expenses and costs including legal fees, if any, incurred in connection with Subcontractor's claims.  SIGAL has final authority to settle all claims submitted to the Owner.  No disputes shall interfere with the progress of construction and the Subcontractor shall continue with its work as directed.

7.4    Claims relating to SIGAL.  As a precondition to any action against SIGAL or its bonding company, Subcontractor agrees to exhaust through SIGAL the remedies available under the Contract Documents, including suit for breach of contract against Owner through SIGAL.   If Subcontractor has a claim or dispute which neither relates to nor is the responsibility of the Owner, Subcontractor may proceed in accordance with Section 23 herein.

7.5    Owner Damages.  If the Owner recovers liquidated or other damages against SIGAL, then SIGAL may assess against the Subcontractor the portion of the Owner's damages that represent the Subcontractor's share of the responsibility.  The amount of such assessment for Owner damages shall not exceed the amount assessed against SIGAL plus the portion of costs and attorney's fees SIGAL incurred in defending against the Owner's claim for damages arising out of or in relation to the Subcontractor's work.

7.6    Work Continuation.  If any problem or dispute arises between SIGAL and Subcontractor as to interpretation of the requirements of this Subcontract, which SIGAL and Subcontractor do not promptly resolve, Subcontractor shall proceed in accordance with the interpretation and direction of SIGAL and prosecute the work diligently and without delay.  Any claims by Subcontractor shall be submitted in accordance with procedures established in Section 7 of this Agreement.

### 8.    INSPECTION AND ACCEPTANCE

8.1    Inspection of Work.  Subcontractor shall provide appropriate facilities at all reasonable times for inspection by SIGAL or Owner of the work and materials provided under this Subcontract, whether at the Project site or at any place where such work or materials may be in preparation, manufacture, storage, or installation.

8.2    Correction of Defective Work.  Subcontractor shall promptly replace or correct any work or materials which SIGAL or Owner shall reject as failing to conform to the requirements of this Subcontract.  If Subcontractor does not do so within a reasonable time, SIGAL shall have the right to do so and Subcontractor shall be liable to SIGAL for the cost thereof.  If, in the opinion of Owner, it is not expedient to correct or replace all or any part of rejected work or materials, then SIGAL, at its option, may deduct from the payments due, or to become due, to Subcontractor, such amounts as, in Owner's judgment, will represent: (1) the difference between the fair value of the rejected work and materials and the value thereof, if it complied with this Subcontract; or (2) the cost of correction, whichever is higher.

8.3    Remedy for Wrongful Rejection.  Subcontractor's remedy for wrongful rejection of work by SIGAL or Owner shall be limited to SIGAL's remedy under the Contract Documents, if rejection is by the Owner or by SIGAL.  SIGAL shall be liable for any increased costs caused by its wrongful rejection of work if the Owner was not involved in said rejection.

8.4    Acceptance.  The work shall be accepted by Owner according to the terms of the Contract Documents.  However, unless otherwise agreed in writing, entrance and use by Owner or SIGAL shall not constitute acceptance of the work.

### 9.    SUBMITTALS

9.1    Timely Submittals.  Subcontractor shall timely prepare and submit to SIGAL all shop drawings, manufacturers' literature, samples and material lists as may be necessary to describe completely the details and construction of its work under the Contract Documents.  Such submittals shall be made in sufficient time so as not to delay performance of the project.  Any deviation from the Contract Documents shall be clearly identified in the shop drawings, and so stated, in writing, in separate correspondence.  Approval of such shop drawings shall not relieve the Subcontractor of its obligation to perform such work in strict accordance with the Contract Documents, nor of its responsibility for the proper matching and fitting of its work with contiguous work.

9.2    Status.  If requested by SIGAL, Subcontractor shall furnish periodic progress reports on its work including information on the status of materials and equipment under this Subcontract, which may be in the course of preparation or manufacture.



# SIGAL CONSTRUCTION CORPORATION
## SUBCONTRACT AGREEMENT

**10.**   **CLEANUP**

Unless **SIGAL** otherwise directs or agrees, Subcontractor shall, at its own expense, clean and remove from the Project all rubbish and debris resulting from the performance of its work and, at the completion of its work in each area of the Project, perform such cleaning as may be required. Such removal shall be done in a manner that will impede neither the progress of the Project nor other trades.

**11.**   **LAWS, PERMITS, FEES AND PATENTS**

11.1   _Compliance._  Subcontractor shall give all notices and comply with all laws, ordinances, rules and regulations bearing on the performance of its work on the Project. Subcontractor shall secure and pay for all permits and Governmental fees, licenses, and arrange inspections necessary for the proper execution and completion of Subcontractor's work. Subcontractor shall comply with Federal, State and local tax laws, Social Security Acts, Unemployment Compensation Acts, and Workers' or Workmen's Compensation Acts, occupational safety and health regulations insofar as applicable to the performance of this Subcontract. Subcontractor shall be duly licensed to operate under the laws of the applicable jurisdictions.

11.2   _Hold Harmless._  Subcontractor agrees to hold **SIGAL** harmless against the payment of any and all losses, costs, expenses, contributions, taxes, or premiums which may become due or payable under Federal, State or local laws arising out of Subcontractor's failure to comply with the laws outlined in Section 11.1 above, including any interest or penalties. Subcontractor waives any and all claims for additional compensation because of any increase in taxes, contributions or premiums unless Owner pays **SIGAL** such increases incurred by Subcontractor.

11.3   _Patents and Royalties._  Subcontractor agrees to pay all royalty and license fees owed by reason of performance of Subcontractor on this Project. Subcontractor agrees to defend all suits or claims for infringement of any patent rights, due to the inclusion of patented materials in the Subcontractor's work, that may be brought against **SIGAL** or Owner, and agrees to indemnify **SIGAL** and Owner for all loss, including costs and expenses, on account thereof.

**12.**   **HEALTH AND SAFETY**

12.1   _Responsibility of Subcontractor._  As relates to the Subcontractor's work, Subcontractor is responsible for the safety of the general public or workers engaged on or in the vicinity of the Project. Subcontractor agrees to comply with all Federal, State, municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety, as shall be applicable to the work, including among others, the Federal Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations and orders which have been or shall be adopted or issued thereunder, and with the safety standards SIGAL establishes during the progress of the work.

12.2   _Stoppages Ordered by SIGAL._  When so ordered by SIGAL, Subcontractor shall stop any part of the work which **SIGAL** deems unsafe until corrective measures, satisfactory to SIGAL, have been taken, and Subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages. Should Subcontractor neglect to take such corrective measures, **SIGAL** may do so at the cost and expense of Subcontractor and may deduct the cost thereof from any payments due or to become due to Subcontractor. Failure on the part of SIGAL to stop unsafe practices shall not be deemed an acceptance or acquiescence by SIGAL of Subcontractor's means or methods of construction and shall in no way relieve Subcontractor of its responsibility.

12.3   _Hold Harmless._  Subcontractor agrees to hold SIGAL harmless for all damages, costs and attorney's fees arising out of, or relating to, Subcontractor's violation of this Section, or for any accident involving its work.

**13.**   **REPRESENTATIONS, INTERPRETATION AND INVESTIGATION**

13.1   _Representations and Investigation._  Subcontractor represents that it is fully qualified to perform this Subcontract. Subcontractor acknowledges that prior to the execution of this Subcontract, it has (a) by its own independent investigation ascertained; (1) the work required by the Subcontract; (2) the conditions involved in performing the work; and (3) the obligations of the Subcontract and the Contract Documents; and (b) verified all information furnished by SIGAL or others and satisfied itself as to the correctness and accuracy of that information. Any failure by the Subcontractor to independently investigate and become fully informed will not release Subcontractor from its responsibilities under this Subcontract.

13.2   _Interpretation._  The parties intend that all terms of this Subcontract are to be considered as complementary. However, in the event of a conflict between or among the terms of this Subcontract Agreement or the Contract Documents, the higher standard or greater responsibility for Subcontractor shall prevail.

13.3   _Inconsistencies and Omissions._  Should inconsistencies or omissions appear in the Contract Documents, the Subcontractor shall notify **SIGAL** and identify the inconsistency or omission, in writing, within three (3) working days of the Subcontractor's discovery thereof. Upon receipt of Subcontractor's notice, SIGAL shall instruct the Subcontractor as to the measures to be taken, if any, and the Subcontractor shall comply with SIGAL's instructions.

13.4   _Field Measurements._  Notwithstanding the dimensions given to the plans, specifications and other Contract Documents, it shall be the obligation and responsibility of the Subcontractor to take such measurements as will ensure the proper matching and fitting of the work covered by this Agreement and contiguous work.

# SIGAL CONSTRUCTION CORPORATION
## SUBCONTRACT AGREEMENT

**14.** <u>TERMINATION FOR CONVENIENCE</u>

SIGAL shall have the right to terminate this Subcontract, without cause, for convenience, when SIGAL determines that it is in its own best interest to so terminate the Subcontract. If this Subcontract is terminated for convenience, Subcontractor shall comply with all of SIGAL's termination instructions and shall be entitled to receive payment for work actually performed and a reasonable overhead and profit in connection with such work, except that if SIGAL's Contract with Owner is also terminated for convenience, termination settlement and costs to Subcontractor shall be as provided in the Contract Documents, and in the amount actually received by SIGAL from Owner. Subcontractor shall not be entitled to any recovery of profit or unabsorbed overhead in connection with work not actually performed or future work.

**15.** <u>SUBCONTRACTOR'S FAILURE OR INABILITY TO PERFORM</u>

15.1    <u>Causes for Termination</u>. If, in the opinion of SIGAL, Subcontractor shall at any time: (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality; (2) fail in any respect to prosecute the work according to the current schedule; (3) cause, by any action or omission, the stoppage or delay of, or interference with, the work of SIGAL or of any other builder or subcontractor; (4) submit a false or misleading lien or claim waiver; (5) fail to make payments to subcontractors, employees and suppliers or (6) otherwise fail to comply with all provisions of this Subcontract or the Contract Documents then, after serving three (3) days' written notice, unless the condition specified in such notice shall have been eliminated within such three (3) days, SIGAL, at its option:

a.    without voiding the other provisions of the Subcontract and without notice to the sureties, may take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to SIGAL for all consequent cost, plus interest, and reasonable attorney's fees thereof;

b.    terminate the Subcontract for default; or

c.    seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance may be necessary to avoid irreparable harm to SIGAL and/or Owner.

15.2    <u>Demand for Assurance</u>. In the event SIGAL becomes concerned about Subcontractor's ability to continue performance, SIGAL may demand adequate assurance from Subcontractor or its successors in the interest of timely future performance of the Subcontract. Failure to comply with such a demand within ten (10) days of receipt of the demand shall entitle SIGAL to terminate Subcontractor for default.

15.3    <u>SIGAL's Rights upon Termination for Default</u>. In the event of termination for default under Section 15.1 and 15.2 above, SIGAL may, at its option: (1) enter upon the premises and take possession, for the purpose of completing any work, of all materials and equipment of Subcontractor; (2) require Subcontractor to assign to SIGAL any or all of Subcontractor's subcontracts and purchase orders involving the Project; or (3) either itself or through others complete the work by whatever method SIGAL may deem expedient. In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the work shall be fully completed and accepted by the Owner. At such time, if the unpaid balance of the price to be paid exceeds the expense incurred by SIGAL, such excess shall be paid by SIGAL to Subcontractor. If such amount due SIGAL shall exceed such unpaid balance, then Subcontractor shall pay SIGAL the difference and reasonable attorney's fees.

15.4    <u>Recourse Against SIGAL</u>. If SIGAL wrongfully terminates Subcontractor, SIGAL shall be liable to Subcontractor for the costs SIGAL would have paid if SIGAL would have terminated Subcontractor for convenience. Subcontractor's remedy hereunder shall be exclusive. Nothing hereunder shall prevent SIGAL from withholding monies from Subcontractor under other provisions of the Contract Documents.

**16.** <u>WARRANTY</u>

16.1    <u>Scope of Warranty</u>. Subcontractor warrants to the Owner and SIGAL that all materials and equipment furnished shall be new, unless otherwise specified, and that all work under this Subcontract shall be of good quality, free from faults and defects and in strict conformance with the Contract Documents. All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. This warranty shall be in addition to, and not in limitation of, any other warranty or remedy required by law or by the Contract Documents.

16.2    <u>Term</u>. Subcontractor warrants its work for the same period as SIGAL warrants the work to the Owner under the Contract Documents. If the Contract Documents do not state a specific warranty period, the Subcontractor warrants its work for a period of one year from the date of Substantial Completion of the entire Project.

**17.** <u>INSURANCE</u>

17.1    <u>Policies</u>. Before commencing the work, Subcontractor shall procure and maintain all its own expense until final acceptance of the work, upon all of its operations and the operations of any of its subcontractors, suppliers or materialmen on the project hereunder, the following policies of insurance, with SIGAL, Owner and Architect as additional insured parties. The following insurance will be primary over any other valid and collectible insurance. All policies will waive Rights of Subrogation against SIGAL and Owner of Project.

a.    <u>Worker's Compensation and Employer's Liability Insurance</u>. Subcontractor shall procure and maintain Worker's Compensation and Employer's Liability Insurance covering all of its employees in conformance with the laws of the state in which the work under the Contract Documents is to be performed, except that such insurance shall not have a limit of liability less than the following:

Employer's Liability $100,000.00 per Accident.



# SIGAL CONSTRUCTION CORPORATION
## SUBCONTRACT AGREEMENT

b.  Comprehensive or Commercial General Liability.  Subcontractor shall procure and maintain coverage to include all operations of the Insured under the Contract Documents and coverage for all liability assumed hereunder with the following limits and extensions of coverage. Coverage to be on Occurrence Form. Claims Made form is not acceptable. Coverage to include: Premises Operations (including X-Explosion, C-Collapse, and U-Underground coverages as applicable); Independent Contractor's Protective; Personal Injury Liability with Employee Exclusion deleted; Contractual, including specified provisions for Contractor's obligation; Broad Form Property Damage, including Completed Operations with the following limits:

Bodily Injury and Property Damage:

| | |
|---|---|
| Each Occurrence | $1,000,000.00 |
| General Aggregate | $2,000,000.00 |
| Personal Injury Liability | $1,000,000.00 |

Products and Completed Operations insurance Aggregate Limit of $1,000,000.00 shall be maintained for two (2) years after final payment and Subcontractor shall continue to provide evidence of such coverage to Owner and SIGAL on an annual basis during the aforementioned period. The Commercial General Liability Policy's General Aggregate shall not be less than $1,000,000.00 and the limits shall apply on a Per Project basis.

c.  Comprehensive Automobile Liability.  Subcontractor shall procure and maintain Comprehensive Automobile Liability insurance covering owned, non-owned and hired motor vehicles with the following combined single limits:

Bodily Injury and Property Damage:

| | |
|---|---|
| Each Occurrence | $1,000,000.00  CSL |

d.  Umbrella Liability. Subcontractor shall procure and maintain an Umbrella Liability policy with limits of $5,000,000.00.

17.2  Notice and Right to Pay Premiums.  Subcontractor shall provide SIGAL with copies of certificates of insurance coverage and proof of payment of all premiums. Insurance policies shall provide for notification to SIGAL of non-payment of any premiums and give SIGAL the right to make the premium payment thereunder within a reasonable time. Any premium payments made by SIGAL shall be deducted from amounts due Subcontractor under this Subcontract. Insurance policies shall provide for 30 days prior written notice to SIGAL of cancellation.

## 18.  INDEMNIFICATION

18.1  Subcontractor's Performance.  To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, SIGAL (including its affiliates, parents and subsidiaries) and other contractors and subcontractors and all of their officers, directors, agents and employees from and against all claims, damages, loss and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's work provided that: (1) any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder; and (2) such obligation shall not be construed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Section 18.

18.2  No Limitation Upon Liability.  In any and all claims against the Owner, SIGAL (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of its officers, directors, agents or employees, by any employees of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation under this Section 18 shall not be limited in any way by any limitation on the amounts or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's or Workmen's Compensation Acts, disability benefit acts or other employee benefit acts.

## 19.  LABOR POLICY

19.1  Project Personnel.  Subcontractor and its subcontractors or suppliers shall not employ anyone engaged in Subcontract work whose employment may be objected to by SIGAL or Owner.

19.2  Work Stoppage.  Should any workers performing work covered by this Subcontract engage in a strike or any other stoppage or cease to work due to picketing or a labor dispute of any kind, said circumstances shall be deemed a failure to perform the work on the part of the Subcontractor due to the conditions and terms set forth in Section 15.

19.3  Equal Employment Opportunity.  Subcontractor shall not discriminate against any employee or employment applicant because of race, sex, color, creed or national origin. Subcontractor shall allow access to its books, records and accounts by representatives of SIGAL or Owner for purposes of investigations to ascertain compliance with the provisions of this Section. These requirements shall be in addition to any similar provision of Equal Employment Opportunity in the Contract Documents. If Subcontractor fails to comply with the Equal Employment Opportunity provisions of this Subcontract, Subcontractor may be terminated for default as specified under Section 15 of this Subcontract.

## 20.  ASSIGNMENT AND SUBCONTRACTING

20.1  Assignment.  Subcontractor agrees that it will not transfer, assign or delegate the Subcontract, or any payment due thereunder, without the written prior consent of SIGAL, which consent shall not be unreasonably withheld.

20.2  Subcontractors.  Subcontractor agrees that all subcontractors and lower-tier suppliers and subcontractors will be subject to all terms and conditions of this Subcontract and the Contract Documents. SIGAL's consent to any subletting shall not be deemed to create any contractual relationship between SIGAL and any Subcontractor or supplier to whom the work or any portion thereof is sublet.




# SIGAL CONSTRUCTION CORPORATION
## SUBCONTRACT AGREEMENT

**21.    PRIVITY**

~~Until this Subcontract is complete and final payment is made, Subcontractor shall not, without the written consent of SIGAL, perform any work directly for Owner or the Owner's tenants.~~ Subcontractor agrees that all work on this Project shall be handled and processed by SIGAL and that Subcontractor will not communicate directly with the Owner's representatives without SIGAL's consent.

**22.    LIENS**

If, at any time, there shall be evidence of any lien or claim for which, if established, SIGAL or Owner might become liable, or which should, in any event, be charged to Subcontractor, SIGAL shall have the right: (1) to require Subcontractor to have same discharged, by posting a bond with the appropriate authorities, or otherwise, within five (5) days of notice; (2) to retain, out of any payment due or thereafter to become due, an amount sufficient to indemnify the parties against said lien or claim, including bond premiums and attorney's fees, and to apply the same in such manner as SIGAL deems necessary to secure protection and/or satisfy such claims and liens. Should there be insufficient unpaid balance to cover the costs incurred in discharging such a lien or claim, Subcontractor shall reimburse SIGAL and/or Owner the difference between the payments due Subcontractor and the costs incurred. Prior to final payment, Subcontractor shall provide SIGAL a release of liens and claims for all work performed under Subcontract, as well as any other evidence SIGAL or Owner may require to demonstrate that there are no other liens or claims whatsoever outstanding against the work.

**23.    ARBITRATION**

23.1    <u>Agreement to Arbitration</u>.  Subject to Section 7.3, claims relating to Owner, unless the parties mutually agree otherwise, or the Contract Documents state otherwise, all claims, disputes and matters in question arising out of, or relating to, this Subcontract Agreement, or the breach thereof, shall be decided by arbitration, which shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect.

23.2    <u>Notice of Demand</u>.  Notice of a demand for arbitration shall be delivered in writing to the other party to this Subcontract Agreement and shall be filed with the Washington, D.C. Office of the American Arbitration Association. A demand for arbitration shall be made within a reasonable time following written notice of the claim, dispute or matter in question has been given. Unless otherwise agreed, a demand for arbitration shall not be made after the date of the final acceptance of the work by Owner or when the institution of legal or equitable proceedings based on the same claim, dispute or matter in question would be barred by the applicable statute of limitations.

23.3    <u>Consolidation</u>.  Except by written consent of the person or entity sought to be joined, no arbitration hereunder shall include, by consolidation, joinder or in any other manner, any person or entity not a party to the Agreement under which such arbitration arises, unless it is shown at the time the demand for arbitration is filed that: (1) such person or entity is substantially involved in a common question of fact or law; (2) the presence of such person or entity is required if complete relief is to be accorded in arbitration; and (3) the interest or responsibility of such person or entity in the matter is not insubstantial. This agreement to arbitrate and any other written agreement to arbitrate with an additional person or persons referred to herein shall be specifically enforceable under the prevailing arbitration law.

23.4    <u>Award</u>.  The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

23.5    <u>Work Continuation and Payment</u>.  Unless the parties mutually agree otherwise, Subcontractor shall carry on its work pending arbitration.  If Subcontractor carries on its work and otherwise complies with the Subcontract Agreement, SIGAL shall continue to make progress payments in accordance with this Subcontract Agreement.

**24.    ATTORNEY'S FEES**

Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interest in any matter arising under this Agreement or to collect damages for the breach of this Agreement, or to recover on a surety bond given by a party under this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, charges, and expenses expended or incurred therein.

**25.    NOTICE**

All notices shall be addressed to the parties at the addresses set out herein and shall be considered as delivered when postmarked, if dispatched by registered mail, or when received in all other cases.

**26.    ADVERTISING**

Subcontractor shall not place any signs, billboards or posters on any portion of the site, building, property or fences (temporary or permanent) surrounding the same, except upon prior written permission received from SIGAL, and then only of a size, material, color and type and at a location approved by SIGAL.

**27.    SEVERABILITY AND WAIVER**

The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or rights as respects further performance.

# SIGAL CONSTRUCTION CORPORATION
## SUBCONTRACT AGREEMENT

28.     **COMPLETE AGREEMENT**

This Agreement is solely for the benefit of signatories hereto and represents the entire and integrated agreement between the parties hereto, and supersedes all prior negotiations, representations or agreements, either written or oral.  No other agreements, representations, warranties or other matters, oral or written, shall bind the parties.

29.     **TITLES**

The titles given to the Sections of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purpose.

IN WITNESS WHEREOF, the parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year above written.

**Atlantic Refinishing and Restoration, Inc.**
Subcontractor

BY: _Janet W. Hall_
SIGNATURE

_Janet W. Hall_
PRINT NAME

_General Manager_
TITLE

_12.09.03_
DATE

**SIGAL CONSTRUCTION CORPORATION**     _VTB_

BY: _____
SIGNATURE

_____
PRINT NAME

_____
TITLE

_1/8/03_
DATE

Rider "A"
DATE: October 27, 1903
SIGAL #: 02790
PROJECT: Old State Build-out
SUBCONTRACTOR'S NAME: Atlantic Refinishing and Restoration, Inc.
PAGE 1 of 3

### A.    SCOPE OF WORK:

Without restricting the generality of the work which shall be performed within the Contract Price, it is clearly understood and agreed that the Subcontractor shall provide all labor, material, equipment, scaffolding, tools, supervision, supplies, applicable taxes, freight, insurance, engineering, layout, surveying work in accordance with the Contract Documents, or reasonably inferable therefrom, and shall include, but is not limited to, the following:

   **Specification Sections:** Division 09638- Dimensional Stone Tile, 09759 Interior Stone Restoration, 05910 Ornamental Metal Restoration, 06408 Woodwork Restoration, 09751 Interior Stone Facing

### B.    ADDITIONAL DUTIES AND RESPONSIBILITIES:

In addition to the duties and responsibilities set forth in the Subcontract Agreement between SIGAL and the Subcontractor, Subcontractor agrees to the following:

   1.   Subcontractor agrees to coordinate its work with SIGAL and other trades such that performance and completion of its work, including but not limited to, procurement, submittals, shop drawings, fabrications, delivery of equipment, testing, inspections and installation, comply with all aspects of SIGAL's schedule, as revised from time to time.  Subcontractor further understands that its work (a) will be performed concurrently with the work of other subcontractors on the Project, (b) is dependent upon the progress of the work of other subcontractors and (c) may not be performed in a continuous manner due to the activities of other subcontractors and job conditions.  The Contract Price fully accounts for and considers the fact that Subcontractor will be working under the above-referenced conditions.

   2.   If, in the opinion of SIGAL, Subcontractor is behind schedule and is so notified by SIGAL, Subcontractor shall employ appropriate means to overcome such schedule delays,  including, but not limited to working overtime, adding multiple work shifts, manpower and equipment.  All of these means shall be without additional compensation and shall continue until the progress of the work is, in the opinion of SIGAL, in conformance with the construction schedule.  If Subcontractor fails to take appropriate means to overcome delays, SIGAL may take any action it deems prudent to attempt to put Project or Subcontractor's work back on schedule and deduct cost of such actions from moneys due or to become due to Subcontractor.

   3.   Subcontractor shall be responsible for any and all costs  of stand-by trades and other subcontractors if Subcontractor elects to, or is required due to his failure to maintain scheduled performance, work other than normal working hours or on Saturdays, Sundays or Holidays.

   4.   Subcontractor will be fully responsible for any and all layout of its work.  Axis lines and bench marks will be established by SIGAL at each floor level, unless such work is specifically required under the Subcontract Agreement as an obligation of the Subcontractor.



Rider "A"
DATE: October 27, 1903
SIGAL #: 02790
PROJECT: Old State Build-out
SUBCONTRACTOR'S NAME: Atlantic Refinishing and Restoration, Inc.
PAGE 2 of 3

5.  Subcontractor is responsible for any and all scaffolding, hoisting and power connections required for its work.

6.  Subcontractor or its duly authorized representative with decision-making authority shall attend periodic progress meetings as may be called by SIGAL, the Owner or the Architect.

7.  Subcontractor agrees that SIGAL shall have the right to assign or transfer SIGAL's responsibilities and obligations to any other entity, including but not limited to the Owner or any entity affiliated with or related to SIGAL.  In the event of such assignment or transference, Subcontractor shall be fully obligated to the assignee or transferee to perform each and every obligation, whether express or implied, arising out of or relating to the Subcontract Agreement.

8.  Subcontractor is responsible for any changes to site conditions necessary for the performance of its work at the full cost and expense of the Subcontractor.  Subcontractor is responsible for its method of access to the site.  Any damage to streets, sidewalks, curbs, trees, utilities, adjacent properties and existing work, unless directly called for in the scope of work, that is a result of the performance of any work under this Subcontract Agreement shall be fully repaired to the satisfaction of SIGAL and the Owner and/or authorities having jurisdiction thereof, at Subcontractor's sole cost and expense.

9.  Subcontractor shall perform any and all punchlist work within fourteen (14) days of receipt of punchlist from SIGAL.  If the Subcontractor fails to complete all punchlist items or notify SIGAL in writing of any items which will not be complete (and the reason why they will not be completed) then SIGAL shall have the right to perform all incomplete work and hold the Subcontractor responsible for all costs incurred, including SIGAL's administrative costs and profit.

10. In addition to the insurance requirements in Section 17.1 of the SIGAL Subcontract Agreement, the following conditions of insurance are to be met by Subcontractor:

    a.  Include as "Additional Insureds":
        (1)    SIGAL Construction Corporation
        (2)    General Services Administration, NCR
        (3)    N/A
        (4)    N/A

    b.  Meet the following limits in lieu of limits in Section 17.1:
        (1)    N/A
        (2)    N/A
        (3)    N/A

**Rider "A"**
**DATE: October 27, 1903**
**SIGAL #: 02790**
**PROJECT: Old State Build-out**
**SUBCONTRACTOR'S NAME: Atlantic Refinishing and Restoration, Inc.**
**PAGE 3 of 3**

11. Subcontractor shall furnish and install any and all necessary materials and labor to complete it's scope of work in accordance with the Contract Documents, including but not limited to, the following items:

    a.  Project Schedule:
        Phase 1—351 calendar days
        Phase 2—406 calendar days
    b.  Furnish and install new limestone for new stair enclosure at roof
    c.  Reconfigure limestone at roof for new door
    d.  Remove, salvage & reinstall limestone panels & sills @ auditorium (4th only); crane for hoisting salvaged material to and from temporary on-site storage location shall be provided by others
    e.  Install flashing @ reinstalled limestone (4th) (2 levels) 1/5-3.204; furnished by others
    f.  Rework existing limestone @ 4 new entrances
    g.  Remove, store, cut and reinstall granite curb and wall coping at new exterior entrances
    h.  Furnish and install stone counters
    i.  Furnish and install sone plinths and base
    j.  Clean stone at repairs
    k.  All restoration work shown but not specifically listed in the unit prices
    l.  Clean stone and black glass wall that are not travertine
    m.  Restore black glass
    n.  Salvage of marble and limestone as required
    o.  Furnish and install stone treads and risers
    p.  Furnish and install wall mounted granite
    q.  Restore/clean stone stairs including removal of abrasive strips
    r.  Furnish and install new non-slip stair treads
    s.  Clean black glass
    t.  Furnish and install all anchorage and shelf angle for new and reinstalled stone cladding (shop dwgs to be stamped by engineer)
    u.  Furnish and install stone thresholds
    v.  Wage Scale

Rider "A"
DATE: October 27, 1903
SIGAL #: 02790
PROJECT: Old State Build-out
SUBCONTRACTOR'S NAME: Atlantic Refinishing and Restoration, Inc.
PAGE 4 of 3

12. Unit Prices :

| Unit | Description | Price |
|------|-------------|-------|
| 1 | Metal Refinishing – clean & polish | $13.00 |
| 2 | Metal Refinishing – Refinish | $13.00 |
| 3 | Metal Refinishing – clean & Polish | $13.00 |
| 4 | Wood Panel Refinishing including ducthman repairs | $25.00 |
| 6 | Repair Marble | $500.00* |
| 6b | Repair Marble | $250.00** |
| 7 | Repair Marble | $500.00* |
| 7b | Repair Marble | $250.00** |
| 8 | Repair Marble | $100.00 |
| 9 | Repair Marble | $30.00 |
| 10 | Repair Marble | $10.00 |
| 11 | Repair Marble | $10.00 |
| 12 | Repair Travertine | $500.00* |
| 12b | Repair Travertine | $250.00** |
| 13 | Repair Travertine | $25.00 |
| 14 | Repair Travertine | $25.00 |
| 15 | Repair Travertine | $5.00 |
| 16 | Repair Travertine | $5.00 |
| 17 | Finish New Wood Paneling | $12.00 |
| 19 | Remove Stone | $8.00 |
| 22d | Stone Base at Partition 12 | $25.00 |



Notes:
   All Unit Prices include bond.
*   These unit prices shall apply if measurement of the quantities is deemed
    by the Owner to be cumulative.
**  These unit prices shall apply if measurement of the quantities is deemed
    by the Owner to be non-cumulative or partially non-cumulative.

13. Alternate—Furnish performance and payment bonds in accordance with Section 3.2 of the
    Subcontract Agreement; $ 18,800.00

Rider "B"
DATE: October 27, 1903
SIGAL #: 02790
PROJECT: Old State Build-out
SUBCONTRACTOR'S NAME: Atlantic Refinishing and Restoration, Inc.
PAGE 1 of 1

## CONTRACT DOCUMENTS:

1.     The contract agreement between the Owner and SIGAL Construction Corporation, dated October 23, 2003.

2.     Plans and specifications as prepared by Karn Charuhas Chapman & Twohey; and DNC Architect:

**DRAWINGS**

| | |
|---|---|
| Volume 1 – Architectural | dated 7/8/03 (see sheets C-002 & C-003 for Index of Drawings) |
| Volume 2 – Architectural (Part 2) & Structural | dated 7/8/03 (see sheets C-002 & C-003 for Index of Drawings) |
| Volume 3 – Mechanical & Plumbing | dated 7/8/03 (see sheets C-002 & C-003 for Index of Drawings) |
| Volume 4 – Electrical, Telecommunications, Fire Protection & Environmental | dated 7/8/03 (see sheets C-002 & C-003 for Index of Drawings) |
| Electrical UPS Upgrade ESOC Computer Facility and Telephone Frame Room Relocation | dated 5/30/03 (see sheet C-1 for Index of Drawings) |

**SPECIFICATIONS**

| | |
|---|---|
| Division 01 Specifications | dated 7/8/03 |
| Volume 1 – Divisions 2 thru 8 | dated 7/8/03 |
| Volume 2 – Divisions 9 thru 16 | dated 7/8/03 |
| Electrical UPS Upgrade ESOC Computer Facility and Telephone Frame Room Relocation | dated 5/30/03 |

**AMENDMENTS**

| | |
|---|---|
| Amendment #2 including drawings & specs | dated 8/15/03 |