**Privileged and Confidential – Attorney Work Product**
**DRAFT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ATLANTIC REFINISHING & RESTORATION, INC.** ) | |
| ) | |
| and ) | |
| ) | |
| **UNITED STATES f/u/b/o ATLANTIC REFINISHING & RESTORATION, INC** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **Civil Action No. 1:06CV01611** |
| ) | |
| **SIGAL CONSTRUCTION CORP.** ) | |
| ) | |
| and ) | |
| ) | |
| **LIBERTY MUTUAL INSURANCE COMPANY** ) | **Judge: Ellen Segal Huvelle** |
| ) | |
| Defendants ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY**

Defendants Sigal Construction Corporation ("Sigal") and Liberty Mutual Insurance Company ("Liberty"), by counsel, submit this Memorandum of Points and Authorities in support of their motion to dismiss the Complaint filed by Plaintiffs Atlantic Refinishing & Restoration, Inc. and United States for the use and benefit of Atlantic Refinishing & Restoration, Inc. (together, "Atlantic") or, in the alternative, for a stay of the Complaint pending the completion of contractually-mandated arbitration.

1

**Privileged and Confidential – Attorney Work Product**
**DRAFT**

## INTRODUCTION

This action is a Miller Act, breach of contract and quantum meruit claim by a subcontractor (Atlantic) against a general contractor (Sigal) and surety (Liberty) for alleged non-payment for work on a federally-administered project. Atlantic's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, stayed, because Atlantic fails to allege that it exhausted the mandatory administrative remedies contained in the Sigal-Atlantic Subcontract, and Atlantic has not, in fact, exhausted those remedies.

## BACKGROUND

In October 2003, Sigal Construction Corporation ("Sigal"), as general contractor, entered into a contract with the United States General Services Administration (the "GSA" or the "Owner") to perform work and provide materials for the construction of the Old State Build-Out project, located at the Harry Truman Building in the District of Columbia (the "Project"). (Compl. ¶ 5). Liberty provided a Miller Act payment bond, bearing number 017010125 (the "Bond"), for the Project on behalf of Sigal. (Compl. ¶ 6). Sigal subsequently entered into a written Subcontract agreement with Atlantic, whereby Atlantic agreed to provide certain labor and material to the Project (the "Subcontract"). (Compl. ¶ 7, Compl. Ex. A). On September 18, 2006,[1] Atlantic filed suit against Sigal and Liberty in this Court, alleging non-payment by Sigal in the amount of $246, 214.00. (Compl. ¶¶s 19, 25 & 28.)

---

[1] Sigal was served with the Complaint on September 26, 2006 and Liberty was served on September 29, 2006. The Defendants' responsive pleadings are therefore timely filed. See Fed. R. Civ. P 12(a)(1)(A).

**Privileged and Confidential – Attorney Work Product**
**DRAFT**

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. See <u>Cooper v. First Gov't Mortgage & Investors Corp.</u>, 206 F. Supp. 2d 33, 35 (D.D.C. 2002). In deciding such a motion, the Court must accept all of complainant's well-pled factual allegations as true and draw all reasonable inferences in the nonmovant's favor. <u>Id.</u>

## ARGUMENT

Atlantic's Complaint should be dismissed because Atlantic fails to allege that it exhausted the alternative dispute resolution procedures required by the Subcontract. In the alternative, the Complaint should be stayed because Atlantic has not, in fact, exhausted the Subcontract's mandatory alternative dispute resolution procedures.

The Subcontract places two important and express conditions precedent on Atlantic's ability to pursue a lawsuit against either Sigal or Liberty. First, as to all Owner-related claims, Atlantic is required to exhaust the administrative remedies provided by the Prime Contract, including filing a pass-through claim against the Owner, before initiating a lawsuit against either Sigal or Liberty:

> <u>Claims relating to SIGAL</u>. **As a precondition to any action against SIGAL or its bonding company,** Subcontractor agrees to exhaust through SIGAL the remedies available under the Contract Documents, including suit for breach of contract against Owner through Sigal. If Subcontractor has a claim or dispute which neither relates to nor is the responsibility of the Owner, Subcontractor may proceed in accordance with Section 23 herein.

Subcontract ¶ 7.4 (emphasis added).

**Privileged and Confidential – Attorney Work Product**
**DRAFT**

      Pursuant to Paragraph 7.4 of the Subcontract, Atlantic's obligation to exhaust its remedies against the Owner via the pass-through process is an express condition precedent to Atlantic's ability to bring any Owner-related claims against Sigal and/or Liberty. Atlantic admits that the validity of the claims it presents in this action are contingent upon receipt by Sigal of payment from the Government. See Compl. ¶ 13 (Sigal required to release retainage "upon receipt of payment from the GSA") and Compl. ¶ 14 (Sigal required to pay subcontractors "within '7 days from receipt of payment' from the government.") Nevertheless, despite Atlantic's admission that the validity of its claims are contingent upon Sigal's payment by the Government, nowhere does the Complaint allege that Atlantic has exhausted its mandatory contractual remedies for Owner-related claims. Atlantic's action, therefore, is prematurely filed.

      Second, for any and all disputes with Sigal, regardless of whether those disputes are related to the Owner, Atlantic is required to seek resolution through arbitration against Sigal before filing suit against either Sigal or Liberty:

> <u>Agreement to Arbitration</u>. Subject to Section 7.3, claims relating to the Owner, unless the parties mutually agree otherwise, or the Contract Documents state otherwise, all claims, disputes, and matters in question arising out of, or relating to, this Subcontract Agreement, or the breach thereof, shall be decided by arbitration, which shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect.

Subcontract ¶ 23.1. Nowhere does the Complaint allege that Atlantic has sought to engage in arbitration with Sigal, and Atlantic has not, in fact, filed a demand with the American Arbitration Association or otherwise sought to initiate arbitration of its claims.

**Privileged and Confidential – Attorney Work Product**
**DRAFT**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-15, establishes a federal policy favoring arbitration of disputes and requires that federal courts rigorously enforce arbitration agreements such as that contained in the Subcontract. <u>Shearson/American Express Inc. v. McMahon</u>, 482 U.S. 220 (1987). The FAA requires federal courts to stay proceedings pending arbitration of any issue referable to arbitration under a written agreement upon application of a party:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Pursuant to the FAA, Atlantic's suit against Sigal must be dismissed or stayed pending completion of the arbitration required by the Subcontract. Moreover, Atlantic's suit against Liberty should also be dismissed or stayed. In Miller Act cases, the Federal courts have consistently stayed subcontractors' actions against sureties pending completion of contractually-required arbitration between the subcontractors and their general contractors.

A recent decision issued by the United States District Court for the District of Maryland is illustrative. In <u>United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.</u>, 349 F. Supp. 2d 934 (D. Md. 2004), a subcontractor brought an action under the Miller Act against the general contractor's surety, seeking recovery for alleged nonpayment. The general contractor was granted permission to intervene, and

5

**Privileged and Confidential – Attorney Work Product**
**DRAFT**

subsequently moved to stay the action against both it and the surety pending arbitration. The Court first granted the stay as to the general contractor, holding that the FAA and the express provisions of the subcontract demanded that result. It then held that the action against the surety should also be stayed because the subcontractor's suit was based on the same facts that would be before the arbitrator and therefore "necessarily contains issue[s] referable to arbitration" under the FAA. Id. at 940.

The MPA Construction court found that the FAA required it to stay the case against the surety, but it also found that public policy supported such a stay. Another Miller Act case, United States ex rel. Tanner v. Daco Constr., Inc., 38 F. Supp. 2d 1299, 1305-1306 (D. Okla. 1999), was central to the court's reasoning. In Tanner, which involved facts similar to those of MPA Construction and the instant case, the Court wrote that failing to stay the case against the surety would undermine the very purpose of the FAA:

> Granting a stay in this situation fosters judicial efficiency. If, on the other hand, the Court were to deny defendants' motion to stay, the arbitration mandate of paragraph 6.1 in the subcontract would be rendered meaningless, and, in every public works project where the subcontractor agrees to a similar clause, the subcontractor could circumvent the arbitration provision by suing the surety. It seems grossly inefficient to have the parties arbitrate and litigate at the same time or bear unnecessary expense and the risk of inconsistent results.

Id. at 1305-06.

Here, as in MPA Construction, Tanner, and dozens of other cases reaching the same result, a subcontractor has brought a Miller Act claim against its general contractor in violation of the express arbitration provisions of its Subcontract. The FAA requires that Atlantic's claims against Sigal be dismissed or stayed pending completion of the

**Privileged and Confidential – Attorney Work Product**
**DRAFT**

arbitration required by the Subcontract, and both the FAA and public policy dictates that Atlantic's claims against Liberty should also be dismissed or stayed.

## CONCLUSION

For the reasons stated above, Defendants Sigal Construction Corporation and Liberty Mutual Insurance Company respectfully request that the Court dismiss Atlantic's Complaint for failure to state a claim upon which relief may be granted; or, in the alternative, stay this action pending completion of the arbitration required by the Sigal-Atlantic Subcontract.

**Privileged and Confidential – Attorney Work Product**
**DRAFT**

**DATED**: October 16, 2006.

                                      Respectfully submitted,

                                      /s/ Jeffrey G. Gilmore
                                      _____
                                      Jeffrey G. Gilmore
                                      D.C. Bar No. 388362
                                      AKERMAN SENTERFITT
                                      WICKWIRE GAVIN
                                      8100 Boone Blvd, Suite 700
                                      Vienna, Virginia 22182
                                      Phone 703-790-8750
                                      Fax 703-448-1801
                                      jeffrey.gilmore@akerman.com

                                      *Counsel for Defendants Sigal Construction*
                                      *Corp. and Liberty Mutual Insurance*
                                      *Company*

**Privileged and Confidential – Attorney Work Product**
**DRAFT**

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA
## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2006, I electronically filed Defendants Sigal Construction Corporation's and Liberty Mutual Insurance Company's Memorandum of Points and Authorities in Support of Motion to Dismiss or in the Alternative to Stay and any attachments, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to:

> Herman M. Braude, Esq.
> Michael A. Lewis, Esq.
> Susan Van Bell, Esq.
> BRAUDE & MARGULIES, P.C.
> 1200 Potomac Street, N.W.
> Washington, DC 20007
> *Counsel for Plaintiff Atlantic Refinishing & Restoration, Inc.*

/s/ Jeffrey G. Gilmore
_____
Jeffrey G. Gilmore